(170 App. Div. 205)

### HYMAN v. BARRETT.

(Supreme Court, Appellate Division, First Department. December 3, 1915.)

1. LANDLORD AND TENANT ⊗⇒5—EXISTENCE OF RELATION.
    Where the owner of premises extended defendant's lease thereto until the premises were put in such repair as required by the tenement house department of New York City, and later the parties agreed that defendant himself should do the work, an occupant of part of the premises was a tenant of the defendant at a time when he was paying the owner rent for the premises and doing the work.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 3, 5, 9, 10; Dec. Dig. ⊗⇒5.]

2. MASTER AND SERVANT ⊗⇒316—INDEPENDENT CONTRACTOR—INJURY TO TENANT—LIABILITY OF LANDLORD.
    Where a lease of the premises had been extended until they should be repaired, and the tenant had later agreed with the owner to repair the premises himself, such tenant could not discharge his obligation to protect his subtenants from disturbance and injury during repairs by securing a competent independent contractor; a landlord's obligation being to see that repairs on the premises are conducted with all reasonable care and prudence, and also being of a personal character and nondelegable.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1242–1243; Dec. Dig. ⊗⇒316.]

3. TRIAL ⊗⇒146—WITHDRAWAL OF JUROR—CONDUCT OF PARTY.
    Where, in a personal injury case, the plaintiff, sitting in back of the courtroom during trial, fainted and was taken outside, defendant's physician went and examined her at the time, and testified that such a fit was one of the manifestations of hysteria, being a spell of what is called hysterical epilepsy, and that he did not believe she feigned it, the denial of defendant's motion to withdraw a juror on the ground that the fainting was a pretense to improperly affect the jury was proper, in view of the physician's testimony.
    [Ed. Note.—For other cases, see Trial, Cent. Dig. § 329; Dec. Dig. ⊗⇒146.]

    Ingraham, P. J., and Laughlin, J., dissenting.

---

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Trial Term, New York County.

Action by Rosie Hyman against Hopkins G. Barrett. Judgment for plaintiff for $2,886.53, and from it, and an order denying his motion for new trial, defendant appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Strang & Taylor, of White Plains (Clinton T. Taylor, of White Plains, of, counsel), for appellant.

Isadore Apfel, of New York City (Moses Feltenstein, of New York City, of counsel), for respondent.

CLARKE, J. The plaintiff alleges: That she was a tenant of defendant at 804 East Fifth street on the 7th day of June, 1910; that defendant was the lessee and in control of, said premises, a portion of which were used as halls. There were two houses, arranged as tenement houses, and in the rear building the plaintiff was a tenant. That plaintiff was crossing the yard between the two buildings on the 7th day of June, 1910, when a board or plank fell upon her and caused the injuries complained of. She claims that the board or plank was dropped from out of a window of the upper story of said rear building by the defendant or his agents, who were engaged in making repairs to said building at the time. There are two questions in this case:

[1] Whether the relation of landlord and tenant existed between the plaintiff and defendant. The court charged as a matter of law that such relation at the time of the accident did exist. In this he was entirely justified. The owner of the property was Mrs. Conklin. On the 20th day of February, 1909, she leased the premises to the defendant at a yearly rental, payable monthly, from the 1st of April, 1909, but a separate instrument was attached thereto providing:

"It is hereby mutually agreed by Cornelia L. Conklin, party of the first part, and Hopkins G. Barrett, party of the second part, that the lease dated February 20, 1909, for the property situate 314–316–318 East Twenty-Eighth street and 835 East Twelfth street and 804 East Fifth street be continued until the property at 804 East Fifth street be put in such repair as required by the tenement house department of New York City."

She also made an agreement on the 16th of April, 1910, with the defendant, under which he agreed to do all work, alterations, and repairing on the two houses situate at 804 East Fifth street for $3,000, and is to pay the said Cornelia L. Conklin $155 per month for the said property from the time the 804 East Fifth street house is completed until February 20, 1911, after which time he is to pay $2,000 for one year after February 20, 1911; and receipts for rent were proved for $130 down to July, 1910, and thereafter for $155. This accident occurred on the 7th of June, 1910. In addition to that, the defendant, as landlord, began a dispossess proceeding against the plaintiff in June, after the accident, for nonpayment of part of the rent for May and part of June, resulting in a judgment adjudging possession of the premises in his favor as landlord, and a warrant of dispossession directed to the marshal was signed on the 28th day of June, as a result of which she was dispossessed, so that the court was

justified in charging that the relation of landlord and tenant existed at the time of the alleged accident.

[2] The contentions are summed up in the charge as follows:

"What is the alleged act of negligence which I am about to submit to you? It is contended by the plaintiff that the defendant negligently conducted building operations by which a board was precipitated from an upper window in the rear building while she was passing from the front building to the rear building to enter her apartment. The defendant in the first place absolutely denies that any such accident occurred in the manner claimed by the plaintiff. That I will take up later. And he also contends that, if it did—and under our Code he is entitled to make a defense within his rights—that the contract for the alterations had been intrusted to a competent contractor, an independent contractor, and therefore that he was free from negligence, in that he exercised ordinary care in selecting an independent contractor who was a free agent to conduct these repairs. As to that, gentlemen, I charge you as a matter of law that the defendant was under obligations to protect his tenants from any unnecessary disturbance, and for that purpose to see to it that the building operations on the building, when repairs were being made thereon, were conducted with all reasonable care and prudence; that that duty of a landlord to protect his tenants from disturbance in the course of his building operations, or repairing operations, is of a personal character, and he cannot discharge it by delegating those operations to a competent independent contractor, and that this obligation extended to the place offered as a means of ingress and egress of the tenants to and from their apartments."

In so charging the learned court was following Paltey v. Egan, 200 N. Y. 83, 93 N. E. 267, where the Court of Appeals said:

"Ordinarily the respondent might reply, as he does attempt to, that he discharged his obligations by securing a competent independent contractor, and that thereby he has been relieved from responsibility for any negligence except of himself, which is not shown to have existed. That defense, however, is not available in this case. The respondent's duty to protect his tenants from disturbance in the course of his building operations was of a personal character, and he could not discharge it by delegating those operations, even to a competent independent contractor. Blumenthal v. Prescott, 70 App. Div. 565 [75 N. Y. Supp. 710]; Sciolaro v. Asch, 198 N. Y. 77 [91 N. E. 263, 32 L. R. A. (N. S.) 945]."

[3] In the case at bar the defendant was the general contractor, as well as plaintiff's landlord, and his contract provided:

"The contractor is to give his personal superintendence to the work, furnish all materials, transportation, labor, scaffolding, etc; * * * He shall be liable for all accidents or damage to property traceable to the negligence of himself or his subordinates."

The accident was testified to by plaintiff and another tenant, and the testimony on defendant's part was slight and unsubstantial. There is no doubt there was a question of fact for the jury, nor is there any doubt as to the woman's injuries. Both plaintiff's and defendant's doctors testified that she was suffering from neurasthenia, and that the blow on the head from this board was a competent producing cause of the situation that she is in.

Sitting in the back of the court during the trial, plaintiff fainted and was taken outside, and appellant urges error in the denial of his motion to withdraw a juror; the intimation being that this fainting was a pretense to improperly affect the jury. But his physician testified:

That he saw she had a fainting fit. That he went outside and examined her when she had it. That such a fit was one of the manifestations of hysteria, and comes in some cases more frequently than others. That her fainting spell was what is called hysterical epilepsy. It resembles epilepsy, but it is not true epilepsy. It is really hystero-epilepsy. That he did not believe she feigned it. That if he were told that this occurred every two or three days, he would not at all be surprised, in view of the conditions he found her in, in March. These fainting fits, or this condition of hystero-epilepsy, may occur very frequently, and that kind of a condition was to be expected.

The denial of a motion for mistrial was right. I think this case was properly submitted to the jury, that there are no reversible errors, and that the judgment and order should be affirmed, with costs to the respondent.

McLAUGHLIN and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). On the 7th day of June, 1910, the plaintiff, who was then a tenant of the defendant, occupying an apartment in a building of which he was the lessee at 804 East Fifth street, borough of Manhattan, while passing through the yard between the building in which her apartment was and another building, likewise leased by defendant, was struck by a board or plank which fell from the window sill of an apartment in the building in which she lived, or from a scaffold erected by employés of a contractor to whom defendant had let the contract for certain repair work, including the erection or repair of water pipes on the side of the building toward the yard, and she has recovered therefor.

The view of the evidence most favorable to the plaintiff is that the board was used on a window sill to hold flowers, and that it was removed by the employés of the contractor to enable them to perform their work, and that through their personal negligence in handling the board or plank it was permitted to drop. The general rule is that a landlord is only liable to a tenant for damages resulting from a defective condition of the demised premises of which he has notice, either actual or constructive, or caused or contributed by his own acts. Cohen v. Cotheal, 156 App. Div. 784, 142 N. Y. Supp. 99, affirmed 215 N. Y. 659, 109 N. E. 1070; Idel v. Mitchell, 158 N. Y. 134, 52 N. E. 740; Decker v. Osterweil, 144 App. Div. 653, 129 N. Y. Supp. 681; Hanselman v. Broad, 113 App. Div. 447, 99 N. Y. Supp. 404. There are, of course, exceptions to the rule.

It is claimed in support of the judgment that one exception makes it the personal and nondelegable duty of the landlord to protect the tenants against injury from such a cause as that shown by the evidence in this case, and that therefore the landlord is liable for the negligent acts of the employés of his independent contractor, precisely as if they were his own acts. I know of no authority which supports that contention. Those relied upon by respondent are, I think, clearly distinguishable on the material facts. It is the well-settled rule in this jurisdiction that the landlord owes a duty to his tenants to exercise

care and diligence—the authorities are conflicting with respect to the degree of care, and no opinion need now be expressed on that point—to prevent injury to or interference with the use and enjoyment of the demised premises from building operations or repair work conducted by him, and to perform such contract obligations as he has undertaken to perform for the benefit of the tenant, of which furnishing and operating an elevator is an example, and that these are nondelegable duties. Paltey v. Egan, 200 N. Y. 83, 90, 93 N. E. 267, reversing 132 App. Div. 254, 116 N. Y. Supp. 889; Sciolaro v. Asch, 198 N. Y. 77, 91 N. E. 263, 32 L. R. A. (N. S.) 945; O'Rourke v. Feist, 42 App. Div. 136, 59 N. Y. Supp. 157; Blumenthal v. Prescott, 70 App. Div. 560, 75 N. Y. Supp. 710; Snow v. Pulitzer, 142 N. Y. 263, 36 N. E. 1059; Judd & Co. v. Cushing, 50 Hun, 181, 2 N. Y. Supp. 836; Butler v. Cushing, 46 Hun, 521; Downey v. Low, 22 App. Div. 460, 48 N. Y. Supp. 207.

In the case at bar, the work which was being done was not, so far as appears, required by any contract obligation of the defendant as landlord to the plaintiff as his tenant. The work was lawful, and it did not involve any obstruction endangering the use of a public highway, and the performance of it as contemplated would neither have interfered with any rights of the tenants nor have constituted a nuisance. It was entirely competent, therefore, for the landlord to employ an independent contractor, and for the negligent acts of the employés of such contractor the defendant is not liable. See Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542; Deming v. Terminal Ry. of Buffalo, 169 N. Y. 1, 61 N. E. 983, 88 Am. St. Rep. 521.

I therefore vote for reversal.

INGRAHAM, P. J., concurs.